This case was brought up by a writ of supersedeas to a judgment of the District Court held at the Sweet Springs. The plaintiffs in the Court below (the now defendants in error) brought an action, as paupers, for the recovery of their freedom. There had been two verdicts in the cause ; the first, which was found for the defendant, (the present plaintiff in error,) was set aside, on the ground of surprise, and because the issue joined was considered immaterial. On the second trial, the Jury found a special verdict in these words
“"We of the Jury, find the issue joined for the plaintiffs, and one cent damages, subject to the opinion of the Court on the following points. The plaintiffs Polly and Mima, were brought into this state in January, 1794, as slaves from Maryland, and were so prior to their arrival here, and sold to the defendant by a person who bought them there, he being, before the said purchase, a resident in Virginia. In June following, the plaintiff Jenny was born. In October following, an application was made to this Court, and the following order made with respect to the plaintiff’s right by the Court, viz. ‘On the motion of the deputy attorney for the Commonwealth, he is assigned counsel for Folly Allen, Mima Allen, and Jenny Allen, to commence and prosecute a suit for their freedom, and it is ordered, that Alexander Henderson, vrho holds them in slavery, do not remove or abuse them, but allow them the liberty of collecting testimony to prove their right of freedom.’ ” In consequence of which order, a suit was instituted and prosecuted for the freedom of the plaintiffs, the writ of which bears date in May following : —at the May term, 1800, being the 22d of the month, the suit was dismissed by '"'virtue of the following order : “Polly Allen, Mima Allen, and Jenny Allen, plaintiffs, against Alexander Henderson, defendant, in trespass, assault and battery, and false imprisonment. — The plaintiffs not farther prosecuting, ordered that the suit be discontinued.” On the same day, another order was made in these words : “On the motion of James Breckenridge, gent, he is assigned counsel for Polly Allen, Mima Allen, and Jenny Allen, to commence and prosecute a suit against Alexander Henderson, who holds them in slavery, to recover their freedom, and it is ordered, the said Alexander Henderson, do not remove or abuse them, and it is further ordered, that the said Polly Allen, Mima Allen, and Jenny Allen, be taken into, and remain in the custody of the sheriff’ of Botetourt County, till the said Alexander Henderson enters into bond with sufficient security, to the said Janies Breckenridge, in the penally of one thousand dollars, to have them forthcoming, to answer the judgment of the Court by virtue of which order, the present suit was instituted and prosecuted, the capias of which bears date the same day. • If the Court shall be of opinion, that under these circumstances, the plaintiffs, Polly and Mima, were twelve months within the State, before the commencement of this action, according to the true meaning and intent of the second section of the act of assembly, intituled “an act to reduce into one the several acts concerning slaves, free negroes and mulattoes,” then we find for the plaintiff’s as to them ; but, if the Court shall be of a different opinion, we find for the defendant as to them, and if the Court shall be of opinion, that the plaintiff Jenny has a right to freedom, having been born within five months after her mother’s arrival in the State, then we find also for the plaintiffs as to her ; but, if the Court shall be of a different opinion, then we find for the defendant as lo her. On this verdict, the District Court decided, that the paupers should recover their freedom and the costs of suit.
Call, for the plaintiff in error, stated that the defendants claimed their freedom, in consequence of their having been brought into this State as slaves, and of their having remained in the possession of the plaintiff for more than twelve months. On the other hand, the plaintiff contends that his keeping them was an act of compulsion, and in consequence of an order of Court which he was not at liberty to disobey.
*He relied on three grounds :
1. That the special verdict was insufficient, in not finding that Henderson continued to reside in this State from the time when the first action was brought till it was discontinued, and another suit instituted. It may indeed be conjectured, but this is only an inference, which can never be resorted to in a special verdict.
2. The next objection (on which he principally relied) was, that, in less than twelve months after the slaves were brought into this State, Henderson was inhibited, by an order of Court, from carrying them out of the State. It might have been his intention to have done so. In January, 1794, the slaves were brought into the State : in June following Jenny was born : and in October of the same year, Henderson was prohibited from removing them. That order continued in full operation till May, 1800. It was his duty to obey it ; and he would have been liable to an attachment for disobedience. While the cause was depending, he was bound to take notice of all orders of the Court in relation to it. Prom a well known rule, that every man is bound to take notice of the proceedings of a Court of competent jurisdiction, a pendente lite purchaser will, in a variety of instances, be bound by the judgment or decree of a Court, without actual notice. Whether Henderson had actual or implied notice, he was bound by it, and was not at liberty to remove the slaves out of the State.
As to the child Jenny, the District Court unquestionably erred in deciding that she *114 was entitled to her freedom. She was born a slave within the limits of Virginia ; because she was born before her mother’s right to freedom had accrued.
The Attorney General, for the defendants in error. The law prohibits, under very severe penalties, the bringing- of slaves into this State.(a) It is an illegal act, both in the purchaser and vendor, and neither can deserve any favour. Henderson cannot pretend that he comes within any of the exceptions of the act; because it is not so found in the special verdict. The words of the law, sect. 2, are explicit, that any slave brought into this State, and remaining therein one whole year, or so long at different times as shall amount to a year, shall be free. It is unimportant in what manner they are kept here. The provisions of the law equally apply to them.
sAlthough it is not expressly 'found that Henderson kept them in the State from the time when the first order was made for instituting the suit, yet enough appears upon the face of the proceedings to shew it; for they were brought into the State in January, 1794, and the last order (which was made in 1800) refers to Henderson, who “holds them in possession.” But if the Court should entertain a doubt on this subject, a venire facias de novo ought to be awarded, that this fact might be more specially found.
But it is said, they were kept here under the order of Court of October, 1794. There is no finding of the Jury to show that Henderson was prohibited from carrying them out of the State ; and in a special verdict, nothing is to be presumed. This order was irregular, the slaves not having been in the State twelve months ; nor was there any law to warrant such order till 179S. It was a mere practice, which might vary in every Court. There was, consequently, no legal process restraining Henderson from carrying them out of the state. On legal principles, a party is not bound to take notice of a writ till service of it. If this order of Court had been authorised by law, still Henderson' could not be considered as having had notice of it till it was served upon him ; and it is no where found that it was served. It cannot be compared to a judgment or decree ; because that is never rendered till after regular proceedings in Court.
With respect to the child Jenny — both on general principles and the act of Assembly, she is entitled to her freedom. On general principles, the rule of law is, that partus se-quitur ventrem. The mother was brought into this State contrary to law. In the period between bringing her in, and her residing twelve months, she created an inchoate right, and the entire residence of twelve months has relation back to perfect that right in her and her posterity. The act of Assembly (Rev. Code, 1 vol. c. 103, sect. 1,) expressly says, “that no persons shall be slaves within this Commonwealth, except such as were so on the 17th of October, 1778, and the descendants of the females of them which cannot be alleged as embracing the case of the child Jenny.
Call, in reply. It is true that the special verdict does not find that Henderson had notice of the order of Court; nor was there any law which required it. From the practice of the Courts, in pauper causes, the order was always Considered the foundation of the writ. It would have been a contempt in counsel to have issued the writ without such previous order: and, if it be a part of the record, in every pauper suit, where is the difference between such order and a bill in Chancery ? Where a bill, which is the inception of a suit in Chancery, is filed, though the subpoena be not served, all subsequent purchasers are bound by it. The terms of the order, and the practice of the Courts, did not require Henderson to be called into Court. ' None of the entries in the proceedings shew that any order was served; although it appears that, in one stage of the business, Henderson was attached for not obeying it. If the practice of the Courts did not require a service of those orders, then the case stands upon the common ground of a record ; of which all persons are bound to take notice. It stands on the ground of bills in equity; of judgments which bind lands ; of the recording of deeds, &c. which affect all persons ; —being the judicial act of a Court of competent jurisdiction. If the Court should not be satisfied with his exposition on this part of the subject, he concurred with the Attorney General, that a venire de novo ought to be awarded.
The rule being to construe a special verdict strictly, nothing can be inferred that is not specially found by the Jury. In the present case, they have only furnished evidence by which to infer facts. The conclusion of the verdict refers it to the Court to infer, from circumstances, whether certain facts existed or not. These circumstances are merely conjectured. The jury might have inferred facts from them ; but the Court could not.
If the Court should be of opinion that Henderson (being a party) was necessarily bound to take notice of the order of Court, then the judgment must be reversed in toto ; but if they should not be satisfied as to the practice in such cases, there ought to be a new trial, in order that those facts may be specially found.
Curia advisare vult.
Saturday, June 6, 1807. The president delivered the opinion of the Court, (consisting of all the Judges,) that there was error in this, that the special verdict was uncertain, and insufficient to establish any facts proving that the defendants in error were detained in this State twelve months, by the compulsion of the plaintiff, contrary to law. Judgment reversed; verdict set aside, and new trial awarded.

 Rev. Code, vol. 1, c. 103, p. 186.